CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
1/4/2022
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UTHRESHA B.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:20-cv-67 |
| | ) |
| KILOLO KIJAKAZI,[2] Acting Commissioner | ) |
| Social Security Administration, | ) |
| | ) |
| **Defendant.** | ) |

# REPORT AND RECOMMENDATION

Plaintiff Uthresha B. ("Uthresha") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1381f. Uthresha alleges that the Administrative Law Judge ("ALJ") erred by failing to properly account for her severe back pain and sciatica, and by failing to account for her limited ability to handle and finger. I agree that the ALJ's decision does not adequately explain her analysis of Uthresha's allegations regarding her pain and limitations. Accordingly, I **RECOMMEND GRANTING in part** Uthresha's Motion for Summary Judgment (Dkt. 19), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 23), and **REMANDING** this case for further administrative proceedings consistent with this opinion.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court's review is limited to determining whether substantial evidence supports the Commissioner's conclusion that Uthresha failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion fails to explain how she discounted Uthresha's testimony regarding her pain and limitations.

## CLAIM HISTORY

Uthresha filed for SSI in July 2017, claiming that her disability began on September 10, 2015, due to chronic back pain and bilateral carpal tunnel syndrome, in addition to other conditions.[4] R. 93–94, 108. Uthresha later amended her alleged onset date to July 18, 2017. R. 13. The state agency denied Uthresha's applications at the initial and reconsideration levels of administrative review. R. 91–124. On August 22, 2019, ALJ Linda Crovella held a hearing to consider Uthresha's claim. R. 33–68. Counsel represented Uthresha at the hearing, which included testimony from vocational expert Cantrell Pittman. On September 30, 2019, the ALJ entered her decision analyzing Uthresha's claims under the familiar five-step process[5] and denying her claim for benefits. R. 13–27.

---

[4] Uthresha filed a previous claim for SSI and disability insurance benefits ("DIB") in 2013, which were both denied at the initial and reconsideration levels of administrative review. R. 13. ALJ Brian Rippel entered a decision on September 9, 2015, denying Uthresha's claims for benefits. R. 72–85.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ found that Uthresha suffered from the severe impairments of spine disorder, breast cancer, carpal tunnel syndrome, peripheral neuropathy, and chronic obstructive pulmonary disease. R. 16. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 18–19. The ALJ concluded that Uthresha retained the residual functional capacity ("RFC") to perform a range of sedentary work. R. 19. Specifically, Uthresha can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand/walk for four hours in an eight-hour workday; can sit for six hours in an eight-hour workday; can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently stoop, kneel, crouch and crawl. Id. The ALJ determined that Uthresha is limited to occasional feeling in her bilateral hands due to decreased sensation, requires a sit/stand option alternating from sitting for one hour to standing in place for two to three minutes while productive; and can occasionally tolerate exposure to fumes, odors, dust, gases, pulmonary irritants, and hazards such as unprotected heights and moving machinery. Id.

The ALJ determined that Uthresha has no past relevant work, but can perform other work in the national economy, such as addresser, charge account clerk, and document preparer. R. 27. Thus, the ALJ determined that Uthresha is not disabled. Uthresha appealed the ALJ's decision, and the Appeals Council denied her request for review on July 30, 2020. R. 1–6.

## **ANALYSIS**

Uthresha asserts that the ALJ's consideration of her back pain and sciatica is legally insufficient. Uthresha further asserts that the ALJ insufficiently explained how she determined her ability to handle and finger. I find that the ALJ's decision does not properly address the severity of Uthresha's pain, and the reasons provided by the ALJ to discount Uthresha's testimony regarding her pain and limitations are unsupported by the record.

I.  **Medical History**

Uthresha suffers from sciatica, carpal tunnel syndrome and peripheral neuropathy. Uthresha was 38 years old when she filed for benefits, and served as the primary caregiver for her mother and grandmother. R. 39. Uthresha was diagnosed with breast cancer in March 2016, and treated with chemotherapy until July 2016. R. 881. Uthresha reported neuropathy in her hands and feet and carpal tunnel syndrome. Id.

Uthresha sought treatment with her primary care provider, Randall Bashore, M.D., for back pain due to degenerative back disease, both prior to and after her August 2017 alleged onset date. R. 326–51, 833. Uthresha consistently complained of back pain at an 8/10 level, with occasional pain at 10/10. R. 271, 274, 326–51. Specifically, Uthresha reported constant pain that radiates down her legs on both sides, worse with any type of activity. R. 881. Uthresha also reported numbness, tingling and weakness in her legs. Id. Dr. Bashore prescribed narcotic pain medication, including a fentanyl patch, oxycodone, and gapabpentin for nerve pain.

Uthresha also presented with decreased sensation in her hands during her treatment visits with Dr. Bashore. R. 330, 333, 337, 340, 343, 349, 837, 842. Uthresha testified that she wears braces on both wrists at night for carpal tunnel syndrome. R. 61. She testified that she has not had injections or surgery, "[b]ecause when they were getting ready to start handling that was when we found out we had the breast cancer, so that kind of- we had to go a whole different route with that..." R. 61.

On September 30, 2017, Uthresha was examined by consultative physician Steve Hansen, D.O. R. 880. Uthresha reported that she stays in bed most days due to pain, she cannot stand for long periods of time, she can lift about 5 pounds and walk about 10 minutes. Dr. Hansen noted,

5

"[t]his is well corroborated during our exam today." R. 881. Dr. Hansen performed a physical examination and determined that Uthresha has difficulty walking secondary to pain as well as balance issues and sensation difficulties. R. 883. Uthresha's reflexes were normal, her mental status was intact, she had some muscle spasms in the paraspinal muscles in her lumbar region and had worse pain with extension than flexion. Dr. Hansen noted "[t]he patient is greatly limited by her pain and her neuropathy." R. 883.

Dr. Hanson completed a functional assessment and determined that Uthresha can stand for less than 2 hours in an 8-hour workday; walk for less than 2 hours in an 8-hour workday; sit for 2–4 hours in an 8-hour workday; lift and/or carry 20 pounds occasionally and 10 pounds frequently; can frequently reach, handle grasp and finger; can rarely feel; and occasionally bend, stoop, crouch or squat. R. 883–84.

On October 5, 2017, state agency physician Wyatt Beazley reviewed Uthresha's records and determined that she could perform light work with limited feeling. R. 102–103. Specifically, Dr. Beazley found that Uthresha could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 4 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; perform unlimited push and pull; occasionally climb ramps and stairs; frequently balance, stoop, kneel, crouch and crawl; and never climb ladders/ropes or scaffolds. Id. Dr. Beazley also determined that Uthresha would have limited feeling in both hands due to decreased sensation. R. 103.

On May 25, 2018, state agency physician Jack Hutcheson, M.D., reviewed Uthresha's records on reconsideration and determined that she could perform light work, including standing and/or walking 6 hours in an 8-hour workday, but with limited feeling in both hands. R. 118–119.

In August 2018, an MRI of Uthresha's lumbosacral spine showed multilevel degenerative changes, that were progressive when compared to her April 2014 MRI. R. 932, 934. The MRI also revealed a broad-based disc bulge at L2-L3, causing mild spinal canal and middle right neurol foraminal stenosis; a broad-based disc bulge at L3-L4 with facet arthropathy, causing worsened moderate spinal canal stenosis and worsening moderate left and mild right foraminal stenosis; and diffuse disc bulges at L4-L5 and L5-S1. It also showed far-left lateral disc/osteophyte material that likely impinged upon the left L5 nerve root. Id.

## II.  ALJ Decision

The ALJ reviewed Uthresha's hearing testimony, noting that she testified to being the primary caregiver for multiple family members including living with and helping take care of her 97-year-old grandmother. R. 20.  Uthresha also testified that she receives help from family members and friends with the care of her mother and grandmother. R. 40. The ALJ noted that Uthresha testified to "using a microwave, washing dishes, showering and dressing herself, getting on the internet with her smartphone, doing social media with her sister [sic] tablet, watching TV, driving until totaling her vehicle in March 2019, and walking to the store to get a few items." R. 20.

The ALJ reviewed Uthresha's medical records. The ALJ noted that Uthresha had spinal degenerative joint disease with back pain and carpal tunnel syndrome, and summarized Uthresha's treatment with her primary care provider in one paragraph, noting "[p]hysical examination revealed a chronically ill appearance and decreased sensation in the hand bilaterally, but alertness, orientation, no acute distress, atraumatic head, regular heart rate with tachycardia, clear lungs, normal bowel sounds with no abdominal guarding, normal musculoskeletal with no deformities and minimal to no edema, and normal neurologic otherwise.  The claimant's

medications were refilled and smoking cessation was recommended." R. 20. The ALJ did ***not*** mention Uthresha's complaints of 8/10 back pain that radiates to her legs, along with numbness, tingling and weakness in her lower extremities. The ALJ also failed to mention that Uthresha was treated with narcotic pain medication, including oxycodone and fentanyl.

The ALJ reviewed Uthresha's cancer treatment records with VCU Health, and noted that she was noncompliant with medications, oncology and XRT appointments, and that Uthresha reported issues following up with appointments and recommendations due to lack of transportation and being the primary caregiver for multiple family members. R. 21. The ALJ also noted multiple times in the opinion that Uthresha is a current smoker. R. 20–22.

The ALJ reviewed the prior 2015 disability decision finding that Uthresha could perform a range of light work, and found that later evidence supported greater limitations due to Uthresha's "ongoing spinal and lower extremity conditions as well as breast cancer, carpal tunnel syndrome, peripheral neuropathy, and COPD." R. 22.

The ALJ reviewed Dr. Hansen's opinion and found it "unpersuasive and unsupported due to vagueness in terms of the amount of time the claimant can stand, walk, and sit, as it does not specify a time, but rather, it describes a range of possibilities." R. 22. The ALJ explained, "this opinion is overly restrictive, internally inconsistent, and notes that the claimant does not require an assistive device which makes the low range of limitations questionable and even less persuasive. Additionally, this opinion is inconsistent with the medical evidence of record as a whole, as its onetime examination finds that the claimant can 'rarely feel,' which is inconsistent with her treatment history, her lack of injections or surgery for carpal tunnel syndrome, and her description of numbness and tingling as intermittent." R. 22.

The ALJ found state agency physician Dr. Beazley's opinion that Uthresha can perform sedentary work with limited feeling "somewhat persuasive," noting that the opinion of occasional manipulative and mostly frequent postural limitations is supported by clinical findings of neuropathy and pain as well as decreased sensation in the hands. The ALJ found the opinion "somewhat consistent" with the medical evidence of record to the extent it recommends sedentary work. However, the ALJ determined that "due to lack of treatment for carpal tunnel syndrome other than very conservative treatment of wearing braces and the fact that the claimant reported that tingling and numbness was intermittent renders this opinion even less persuasive." R. 23.

The ALJ found Dr. Hutcheson's opinion on reconsideration that Uthresha could perform light work "unpersuasive" and unsupported by the evidence. Specifically, the ALJ found Dr. Hutcheson's conclusion that Uthresha could stand and walk for six hours, frequently climb ramps and stairs and occasionally climb ladders, ropes or scaffolds unsupported by Uthresha's neuropathy and pain. Id. The ALJ determined that the evidence of record supports greater limitations warranting reduction to sedentary work due to the severity of Uthresha's breast cancer, spine disorder, carpal tunnel syndrome, neuropathy and COPD. Id.

The ALJ determined that Uthresha's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence. R. 24. The ALJ noted that Uthresha has not had the level of treatment one would expect for a disabled individual. The ALJ also noted that Uthresha has a history of noncompliance noted by the UVA cancer center clinic; but then proceeded to note that Uthresha explained that her noncompliance was a transportation issue and that appointments were difficult because she was the primary

9

caregiver for multiple family members; and that she did not follow up with oncology because her boyfriend was in a car accident with prolonged hospitalization. Id.

The ALJ determined that Uthresha's complaints of pain are not entirely consistent with the medical evidence. The ALJ noted that Uthresha was "responsive" to conservative treatment and medications, was able to stand, walk and move about normally without using an assistive device. R. 25. The ALJ noted that Uthresha "continues to perform numerous robust activities of daily living." R. 25. The ALJ noted that physical examinations revealed "no extremity edema, 5/5 strength in all muscle groups, normal cardiovascular, pulmonary, chest, breasts, abdomen, musculoskeletal, range of motion and neurologic." R. 25. The ALJ found that Uthresha's reports of cooking for herself and going out at night were inconsistent with her complaints of disabling limitations. R. 25. The ALJ also noted that Uthresha reported showering/bathing, dressing herself, preparing sandwiches, frozen/microwaveable meals, doing a little cleaning, washing dishes, doing laundry, dusting, playing games, reading, watching TV, and paying bills. Uthresha also reported using her phone, shopping online and in stores, attending doctors' appointments, driving at times, and being a primary caregiver for multiple family members. The ALJ concluded, "such activities are inconsistent with disability." R. 26. Thus, the ALJ concluded that Uthresha can perform sedentary work, including standing and walking for 4 hours in an 8-hour workday; sitting for 6 hours in an 8-hour workday; frequent stooping, kneeling, crouching and crawling; occasional feeling in her hands; and an option to alternate from sitting for an hour to standing in place for 2–3 minutes. R. 19.

### III.    Discussion

Uthresha asserts that the ALJ failed to consider material evidence regarding the severity of her pain. Pl. Br. Summ. J. p. 4.  I agree. The ALJ's opinion does not accurately consider or account for the severity of Uthresha's back pain, which is repeatedly documented in the record.

Despite consistent treatment notes reflecting Uthresha's chronic, severe back pain, the ALJ's fourteen-page decision makes only passing, non-specific references to Uthresha's pain and sciatica, and focuses more heavily on her cancer treatment. The ALJ's decision does not discuss or even refer to the severity of Uthresha's pain level.  The decision does not acknowledge Dr. Basham's treatment notes consistently reflecting Uthresha's reports of back pain at levels of 8/10 through 10/10.  The ALJ also does not mention or discuss that Dr. Basham prescribed oxycodone and fentanyl for pain, along with gabapentin for nerve pain. The ALJ's failure to fully discuss the record evidence establishing Uthresha's pain level is a critical error, as the ALJ discounted Uthresha's subjective reports of pain and limitation in the decision, finding her allegations "inconsistent" with evidence in the record.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled.  Thus, the ALJ must "examine the entire case record, including the objective

11

medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

Here, the ALJ found that Uthresha has conditions that could reasonably produce her alleged symptoms. R. 24. Specifically, the ALJ noted "[r]eturning to the claimant's allegations, she does have COPD, breast cancer, carpal tunnel syndrome, neuropathy, and spinal issues and residual pain." However, the ALJ found that Uthresha's statements concerning her impairments and her ability to work are "not entirely consistent with the medical evidence and other evidence in the record." Id. The reasons provided by the ALJ to discount Uthresha's testimony regarding her pain and limitations are undermined by the ALJ's failure to appreciate the record evidence documenting Uthresha's pain level, and erroneously rely on a lack of objective evidence, a failure to pursue more aggressive treatment, and "robust" daily activities.

The ALJ determined that Uthresha "has not had the level of treatment one would expect for a disabled individual," (R. 24) and described Uthresha's treatment as "conservative," citing her lack of injections and surgeries. R. 25. However, not all pain-inducing conditions are properly treated by injections or surgery. See Arakas v. Comm'r, 983 F.3d 83, 102 (4th Cir. 2020) ("Arakas cannot be faulted 'for failing to pursue non-conservative treatment options where none exist.'") (citing Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010)). Uthresha's doctors did not recommend more invasive treatment for her chronic back pain or carpal tunnel syndrome and neuropathy. Indeed, Uthresha testified that she saw a neurosurgeon for her back pain and he told her injections were not a good idea and surgery might help her herniated disc but would not help her other back issues. R. 52–53. Further, the ALJ failed to mention that Uthresha was consistently prescribed multiple narcotic pain medications, including oxycodone

12

and fentanyl. Uthresha's pain medication was so significant that her treating physician also prescribed Naloxone as a precaution for opioid overdose. R. 330.

The ALJ also found that Uthresha's testimony was not supported by objective findings on examination, which revealed "no extremity edema, 5/5 strength in all muscle groups, normal cardiovascular, pulmonary, chest, breasts, abdomen, musculoskeletal, range of motion and neurologic." R. 25. These objective physical findings do not contradict Uthresha's well-documented degenerative disc disease, with likely nerve impingement; her peripheral neuropathy and carpal tunnel syndrome, and do not refute her allegations of pain. Further, the ALJ failed to discuss Dr. Hansen's findings during his consultative examination that Uthresha had muscle spasms in her paraspinal musculature in the lumbar region; she had worse pain with extension than flexion; she had positive facet joint loading and positive straight leg raise on the right. Dr. Hansen concluded "[t]he patient is greatly limited by pain and her neuropathy." R. 883. The ALJ's reliance on mischaracterized and cherry-picked "normal" exam findings to dismiss Uthresha's allegations and virtually all of the opinion evidence as "inconsistent" with the record renders the decision unsupported. See Arakas, 983 F.3d at 95–96 ("Here, the ALJ disregarded this longstanding precedent and the agency's own policy by improperly discounting Arakas's subjective complaints of pain and fatigue, based largely on the lack of objective medical evidence substantiating her statements.... Because Arakas was entitled to rely exclusively on subjective evidence to prove that her symptoms were so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day, the ALJ applied an incorrect legal standard in discrediting her complaints based on the lack of objective evidence corroborating them." (internal quotations omitted)).

The ALJ also noted multiple times in the decision that Uthresha was "noncompliant"

13

with her treatment recommendations, referring to Uthresha's failure to follow up with oncology for her cancer treatment.  However, the same treatment notes reflect that Uthresha provided reasons for her delay following up, including that she has issues obtaining transportation and is the primary caregiver for family members. See R. 39 (Uthresha testified that her radiation treatment was delayed because it was five days a week for six weeks and she had no transportation or money to pay someone to take her.)  Regardless, Uthresha's breast cancer is in remission and is not the main impairment limiting her functional capacity. Uthresha's delayed cancer treatment is not relevant to the severity of her back pain, peripheral neuropathy and carpal tunnel syndrome, and is not a persuasive reason to discount her testimony regarding her ability to perform consistent work activities for 8 hours a day.

 Further, the ALJ erred by describing Uthresha's reported daily activities as "robust" and finding them "inconsistent with disability." R. 25–26.  Uthresha's reported daily activities consist of light cleaning and laundry, personal care, occasional shopping in stores and attending doctor's appointments. These are hardly "robust." As the court stated in Arakas, "[a] claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities." Id. at 101.

 The ALJ repeatedly noted that Uthresha cares for her mother with Alzheimer's disease and her grandmother, but also noted that Uthresha testified that her family members and friends help her perform this caregiving. See R. 40 (Uthresha testified that she has friends come in and help her care for her mother and grandmother because "they know I'm not capable of doing it.")

 The ALJ also referenced Uthresha's report to Dr. Hansen that she "goes out at night" multiple times in the decision as evidence that Uthresha is not as limited as she claims. R. 22, 25. However, Dr. Hansen's opinion states, "[s]he only goes out at night. She reports stress and

anxiety and depression that are impeding her relationships." R. 881. Uthresha's report of "only going out at night," coupled with her reports of stress and anxiety, suggest social anxiety rather than a late-night party habit. As in Arakas, the ALJ failed to adequately explain how Uthresha's ability to carry out limited daily activities such as microwaving food, using a tablet, occasional shopping in stores, supported the conclusion that she could sustain an 8-hour workday. See Arakas v. Commissioner, 983 F.3d at 99. Thus, substantial evidence does not support the ALJ's conclusion that Uthresha's activities were inconsistent with her subjective complaints.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for her opinion. However, here, the ALJ failed to adequately consider Uthresha's complaints of pain and limitations, and relied upon unpersuasive and unsupported reasoning to discount Uthresha's alleged impairments. Accordingly, I conclude that the ALJ's decision regarding Uthresha's RFC is not supported by substantial evidence.[6]

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** entering an order **DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of

---

[6] Because I find that remand is warranted based on the ALJ's failure to adequately analyze and account for Uthresha's pain level and limitations, Uthresha's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

      Entered: January 4, 2022

*Robert S. Ballou*

      Robert S. Ballou
      United States Magistrate Judge